PETRONA PAGÁN, Plaintiff and Appellant, *v.* F. FRESNO & Co., LTD., ET AL. Defendants and Appellees.

No. 4460. Argued June 14, 1928.—Decided May 10, 1929.

*Fernando Gallardo Díez* for the appellant. *González Fagundo & González Jr.* for the appellees.

Mr. Justice Hutchison delivered the opinion of the court.

On August 21, 1923, F. Fresno & Co., S. en C., commenced an action in the Municipal Court of Yabucoa against José Fuentes Valle, and on August 31st attached as the property of Fuentes a house and lot on Muñoz Rivera Street in the municipality of Yabucoa.

Petrona Pagán then instituted the present *tercería de dominio* proceeding, and appeals from an adverse judgment rendered after a trial *de novo* in the district court. The previous history of the case is outlined in *Pagán* v. *Fresno & Co.*, 36 P.R.R. 485. The only answer on the part of Fresno & Co. was a general denial of the averment as to ownership and an admission of all other facts alleged in the complaint.

At the trial in the district court plaintiff presented a notarial instrument dated August 28, 1923, whereby Secundino Rodríguez ratified a sale said to have been embodied in a private document previously executed by him in favor of plaintiff on September 30, 1919. This deed was admitted without objection on the part of defendants and plaintiff rested.

Plaintiff was then called as a witness for defendants and testified in substance: That she had purchased the house from Secundino Rodríguez some five years before the date of the trial and was paying taxes thereon according to the papers in her possession; that Secundino Rodríguez executed the sale to plaintiff in writing before Renato and a notarial instrument before Fernando Gallardo; that witness knew José Fuentes, her son-in-law; that when witness bought the house it was in bad condition and had to be torn down and replaced by a new one about two years before the date of the trial; that the lumber for the new house was bought from Mr. Martínez and was paid for; that the son-in-law Fuentes Valle was commissioned to purchase the said lumber; that Feliciano Rodríguez, a son of witness, gave her the money with which to buy the house; that it was not José Fuentes Valle who bought it; that José Fuentes Valle was commissioned to buy the

lumber from F. Fresno & Company, but the lumber was paid for with money earned by the son in San Juan.

José Martínez, the managing partner of Fresno & Co., also took the stand as a witness for defendants and said that plaintiff bought the lumber for the house in controversy from Fresno & Co.; that Fresno & Co. had transacted business with José Fuentes since 1916, selling him lumber; that the lumber sold to him was for the building of a house owned by Fuentes on Muñoz Rivera Street in Yabucoa; that when requested to pay for the lumber Fuentes said that he was going to sell the houses in order to make the payment, and did not pay, but later offered to mortgage the houses and then sold to Petrona Pagán the house in controversy; that witness tried to collect from Fuentes for the lumber and he did not pay; that then the complaint was filed in the Municipal Court of Yabucoa and it seems that about the same time Fuentes sold the houses, but had not paid the account; that José Fuentes Valle and his family were in possession of the houses as owners; that Fuentes had offered to mortgage or to sell the houses in order to pay what he owed; that in addition to the lumber purchased from Fresno & Co. witness, as managing partner of the firm, advanced to Fuentes one hundred and fifty dollars ($150) to pay for an old house and for the site upon which the house described in the complaint was built; and that the old house and lot were purchased by Fuentes from Juan de Mata.

The documentary evidence for defendants consisted of two certificates. One was issued by the secretary of the Municipal Court of Yabucoa and discloses the date upon which the original complaint in the case of Fresno & Co. v. Fuentes was filed and the date of the attachment. The other was from the treasury department and shows that on February 7, 1923, Fuentes in a sworn statement rendered the property in controversy for taxes as belonging to him.

The district judge in his statement of the case and opinion does not discuss the testimony of Martínez, but bases his

conclusions that the sale to Petrona Pagán was a simulated transfer upon the fact that Fuentes had rendered the property for taxes in February, 1923, coupled with the circumstance that the deed of ratification was executed by Rodríguez within a few days after commencement of the action against Fuentes. We can not concur in the conclusion so reached.

Section 21 of our Law of Evidence reads as follows:

"A witness is presumed to speak the truth. This presumption, however, may be repelled by the manner in which he testifies, by the character of his testimony, or by evidence affecting his character for truth, honesty, or integrity, or his motives, or by contradictory evidence."

Among the disputable presumptions established by section 102 we find:

"1. That a person is innocent of crime or wrong.

"* * * * * * *

"19. That private transactions have been fair and regular."

See also *Ana María Sugar Co. v. Castro*, 28 P.R.R. 225, 240, and cases cited, wherein these principles have been heretofore discussed and applied.

The statement of Petrona Pagán as a witness for defendants was enough to establish a *prima facie* case of ownership, independently of the deed of ratification or of the private document executed in September, 1919.

Whether or not Petrona Pagán testified at the trial in the municipal court, prior to February 9, 1924, does not appear. Her complaint filed in October, 1923, alleged acquisition by purchase from Secundino Rodríguez on September 30, 1919. The first judgment in the district court was rendered after a trial *de novo*, but without passing upon the merits, on March 18, 1926. This judgment was reversed and a new trial ordered in April, 1927.

The case came on to be heard a second time before the district court on August 17th of that year. Thereupon the

matter was submitted for decision upon the evidence adduced at the former trial, and the statement of the case now before us is that used upon the previous appeal.

If Secundino Rodríguez was not in possession of the house and lot in 1919, if he had no title thereto or if he did not execute the alleged private document before Renato on September 30th of that year, defendants had ample opportunity to ascertain the facts and to offer additional evidence at the new trial ordered by this court. If Feliciano Rodríguez, son of the plaintiff, was not working in San Juan or was not earning enough to enable him to provide the purchase money for the house and lot or to pay for the lumber used in rebuilding, defendants might have brought the truth to light. If Secundino Rodríguez be related by blood or marriage either to Petrona Pagán or to Fuentes, that fact is not disclosed by the record. There is no evidence of friendship or of business connection between Rodríguez and Fuentes. Both the testimony of Petrona Pagán and the deed of August 28, 1923, stand unchallenged upon the record, unless affected by the statement of Martínez or by the circumstances indicated in the opinion of the trial judge.

Martínez speaks indiscriminately of the house in controversy and of another house or houses owned by Fuentes. His testimony is vague and self-contradictory, but the statement that plaintiff bought the lumber for the house in controversy from Fresno & Co. is perfectly plain. He does not say that the house owned by Fuentes on Muñoz Rivera Street, for which Fuentes bought lumber, was the house now claimed by plaintiff. He does say that Fuentes had expressed an intention of selling "the houses" and that when pressed for payment did sell one of them to Petrona Pagán. Such a statement does not demand serious consideration as pointing to a conspiracy between Fuentes and his mother-in-law, or between either or both of them and Rodríguez. Possession of "the houses" by José Fuentes and his family under a claim of ownership did not divest plaintiff of her title.

The statement that Fuentes purchased the house and lot now in controversy from Juan de Mata with money furnished by Fresno & Co. is more serious and definite. But even here no date is given and Juan de Mata is not identified. Fuentes might have bought from Mata at any time after 1916 and thereafter sold to Rodríguez, the vendor of Petrona Pagán, at any time before September 30, 1919. Even otherwise the title derived by plaintiff from Rodríguez might prove superior to that acquired by Fuentes from Juan de Mata. Rodríguez at least appeared before some sort of scrivener or witness in 1919, and again before a notary public in 1923. The only mention made of Juan de Mata is in the testimony of Martínez. In any event, if, as stated by Martínez at the outset, Petrona Pagán purchased from Fresno & Co. the lumber with which to build the house now claimed by her, then the conveyance by Rodríguez of the property did not defraud Fresno & Co.

The summons in the action commenced by Fresno & Co. against Fuentes was not issued until August 31st, several days after execution of the deed of ratification by Rodríguez. There is nothing to show that Fuentes had any knowledge of the pending action before the summons was served. The only basis for a theory of ownership by Fuentes is the fact that he rendered the property in his own name for purposes of taxation in February, 1923. Whatever his motives, neither that circumstance nor Martínez's statement nor the effect of both combined is enough to overcome the *prima facie* case established by plaintiff.

The evidence as a whole raises a strong suspicion as to the execution of a *bona fide* transfer in 1919 and as to the purpose and validity of the notarial instrument of August 28, 1923. But we do not find any clear and convincing proof such as is required to establish the theory of a fraudulent conveyance.

The judgment appealed from must be reversed.